# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CYNTHIA PFEIFER,

*Plaintiff,*

vs.

Case No. 09-CV-1248-EFM

FEDERAL EXPRESS CORPORATION,

*Defendant.*

## MEMORANDUM AND ORDER

On August 13, 2009, Plaintiff Cynthia Pfeifer ("Plaintiff") filed a one-count Complaint against Defendant Federal Express Corporation ("Defendant") alleging a workers' compensation retaliation claim. This matter now comes before the Court on Defendant's motion for summary judgment (Doc. 60), filed on September 18, 2013, seeking to preclude Plaintiff from pursuing her retaliation claim on the grounds of judicial estoppel. On October 29, 2013, this Court granted a motion to intervene filed by Chapter 13 Bankruptcy Trustee Laurie B. Williams ("Trustee"). Plaintiff and the Trustee now join in support of Plaintiff's October 30, 2013, motion for partial summary judgment (Doc. 71), seeking dismissal of Defendant's motion for summary judgment on the judicial estoppel issue. For the reasons stated below, Defendant's motion is granted in its entirety. Plaintiff's motion is granted only so far as it allows the Trustee to pursue Plaintiff's

claim for workplace retaliation in an amount not to exceed Plaintiff's current debt, $157,489.68. The remainder of Plaintiff's motion is denied.

## I.    Factual and Procedural Background[1]

Defendant, a Delaware corporation, is a publicly held entity doing business throughout the United States, including in the city of Hays in Ellis County, Kansas. Defendant hired Plaintiff on January 17, 1994, and continuously employed her for over fourteen years, until May 2, 2008. On September 11, 2007, during the course of her regular duties, Plaintiff sustained an injury to her left knee, after which she sought medical treatment and care from a Defendant-approved physician. Plaintiff was thereafter placed on leave and was entitled to workers' compensation. On September 27, 2007, Plaintiff underwent a left knee arthroscopy, followed by several months of physical therapy. She was released to return to light work duty on November 7, 2007; however, Defendant informed Plaintiff that she could not return until she was medically released for full duty. Plaintiff obtained this full release on November 27, 2007.

Plaintiff returned to work for four months following her release. Following a quarterly audit on March 18, 2008, Defendant accused Plaintiff of falsifying her timecard. Plaintiff was thereafter placed on suspension until May 2, 2008, when she was terminated.

On August 13, 2009, Plaintiff filed suit alleging wrongful termination/retaliation in reaction to her workers' compensation claim. Plaintiff claimed Defendant terminated her employment and subjected her to repeated acts of retaliation, harassment, and intimidation because of her September 2007 work-related injury. She seeks front and back pay, compensatory and punitive damages, attorney's fees, and a directive ordering Defendant to

---

[1] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts and they are related in the light most favorable to the non-moving party.

remove or expunge any negative, discriminatory, retaliatory, or defamatory memoranda and documentation from her employment records.

On March 2, 2010, Defendant filed a motion for summary judgment seeking to dismiss Plaintiff's workers' compensation retaliation claim. In its motion, Defendant alleged that Plaintiff failed to bring her claim within the six-month contractual limitations period, as agreed to by Plaintiff in her executed employment agreement with Defendant. On February 2, 2011, this Court granted Defendant's motion, finding that: (1) Defendant's six-month filing requirement did not violate Kansas public policy; and (2) Defendant's contractual limitation provision was reasonable. On February 9, 2011, Plaintiff filed a motion seeking to certify the following question to the Kansas Supreme Court:

> [c]an a provision in an employee's written contract with her employer, which provides that any claim by the employee against the employer must be brought within six months after the claim accrues, be applied to supersede the Kansas two year statute of limitations which applies to the employee's claim against the employer for workers' compensation retaliatory discharge?"

Plaintiff's motion was denied. Thus, on February 25, 2011, Plaintiff appealed this Court's ruling granting Defendant summary judgment.

Following a November 9, 2011, oral argument, the Tenth Circuit Court of Appeals chose to certify Plaintiff's question to the Kansas Supreme Court. Both Plaintiff and Defendant filed briefs and, on May 22, 2012, participated in oral argument before the Kansas Supreme Court. On June 7, 2013, the Kansas Supreme Court answered the certified question in favor of Plaintiff, effectively reversing this Court's grant of summary judgment. The Appellate Court therefore remanded this case to this Court on July 23, 2013.

Meanwhile, on November 21, 2012, Plaintiff and her husband jointly filed a voluntary petition for Chapter 13 bankruptcy in the United States Bankruptcy Court for the District of

Kansas.[2]  In both her petition and corresponding financial affairs documents, Plaintiff failed to disclose her lawsuit against Defendant.  On April 13, 2013, the Bankruptcy Court entered a Corrected Order Modifying and Confirming Plaintiff's Chapter 13 Bankruptcy Plan (the "Plan") which provided Plaintiff and her husband to "pay to the Trustee plan payments in the monthly amount of $100.00 for forty-four (44) months, but in any event no less than thirty-six (36) months and until a total of $4,400.00 is paid under the Plan."

On August 14, 2013, after becoming aware of Plaintiff's omission, Defendant served Plaintiff with a Second Set of Requests for Admission requesting that Plaintiff admit that she did not disclose her lawsuit against Defendant in her Chapter 13 filings.  On that same day, Defendant advised Plaintiff's counsel in writing that it intended to seek summary judgment on the basis of judicial estoppel.  On August 15, 2013, Defendant filed a motion seeking leave to amend its Answer to include the following affirmative defense: "FedEx intends to file a motion for summary judgment on the grounds that Plaintiff failed to disclose this pending lawsuit as an asset in her Chapter 13 bankruptcy proceedings, in which her Chapter 13 Plan was confirmed and her consumer debts were greatly reduced."[3]  On August 21, 2013, more than two months after the Kansas Supreme Court's decision, Plaintiff informed the Trustee that she would be amending her bankruptcy pleadings to include her claim against Defendant.  On that same day, Plaintiff filed Amended Bankruptcy Schedules B and C.[4]  On September 13, 2013, Plaintiff filed an Amended Statement of Financial Affairs.[5]

---

[2] Bankruptcy Petition No. 12-13190.

[3] Doc. 53.

[4] Schedule B, which required Plaintiff to list "other and contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims" and give the estimated value of each, was amended by Plaintiff to read: "Debtor has a wrongful termination lawsuit against Federal Express Corporation.

Defendant now seeks to foreclose, through a motion for summary judgment, Plaintiff's claim for workers' compensation retaliation on the grounds of judicial estoppel. Both Plaintiff and the Trustee object to Defendant's motion.

## II.    Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[6] A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[7] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[8] The nonmovant must then bring forth specific facts showing a genuine issue for trial.[9] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits – conclusory allegations alone cannot survive a motion for summary

---

09 CV 1248 in the United States District Court for the District of Kansas—Wichita Division. Debtor lost on summary judgment in the District Court. It was appealed to the Tenth Circuit who certified it to the Kansas Supreme Court." Plaintiff listed the value of her claim against Defendant as 0.00. Doc. 72, Attachment 3, at 4.

[5] The Statement of Financial Affairs, which required Plaintiff to list all suits, administrative proceedings, executions, garnishment, and attachments that Plaintiff was a party to within one year immediately preceding the filing of her bankruptcy case, was amended to include the following information: Cynthia Pfiefer v. Federal Express Corporation, 09-CV-1248-EFM, wrongful termination lawsuit, United States District Court District of Kansas, remanded on appeal. Doc. 72, Attachment 4, at 3.

[6] FED. R. CIV. P. 56(a).

[7] *Haynes v. Level 3 Communs.*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[8] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[9] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

judgment.[10]  The court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[11]

## III.  Analysis

Defendant argues that Plaintiff should be precluded from pursuing her retaliation claim against Defendant given Plaintiff's failure to list this lawsuit in her Chapter 13 bankruptcy petition.  Specifically, Defendant seeks judgment on the legal theory of judicial estoppel. In return, Plaintiff seeks partial summary judgment on Defendant's judicial estoppel claim, contending that judicial estoppel is inappropriate in cases where, as here, the underlying claim was decided on its merits more than one year prior to a bankruptcy filing.  In the alternative, Plaintiff argues: (1) that even if she took an inconsistent position by not disclosing this case in her bankruptcy filings, her failure to do so was based on inadvertence or mistake; (2) Plaintiff never misled the bankruptcy court by failing to disclose this claim; (3) Plaintiff has not received an unfair advantage by failing to disclose this claim; and (4) it is Plaintiff's creditors that will be harmed should this Court grant Defendant's summary judgment motion.

Judicial estoppel is an equitable doctrine that seeks "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment . . . [and] to prevent improper use of judicial machinery."[12]  Courts generally consider three nonexclusive factors when determining whether to apply the doctrine:

---

[10] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores*, 144 F. 3d 664, 670 (10th Cir. 1998)).

[11] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[12] *Queen v. TA Operating, LLC*, 734 F.3d 1081, 1087 (10th Cir. 2013) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)).

[f]irst, a party's subsequent position must be clearly inconsistent with its former position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.[13]

These three factors are not meant to be "an exhaustive formula for determining the applicability of judicial estoppel."[14] Nor are they meant to be inflexible prerequisites.[15] "Additional considerations may inform the doctrine's application in specific factual contexts."[16]

The Tenth Circuit is no stranger to invoking its right to judicial estoppel in the context of a plaintiff/debtor who fails to disclose a pending suit on her bankruptcy filings. In *Eastman v. Union Pacific Railroad*,[17] a plaintiff railroad worker filed a personal injury claim against the defendant employer. While this claim was pending, the plaintiff filed a voluntary Chapter 7 bankruptcy petition in which he failed to mention the personal injury claim.[18] Upon a motion from the defendant employer, the trial court granted summary judgment, precluding the plaintiff from pursuing his personal injury claim on the grounds of judicial estoppel.[19] On appeal, the Tenth Circuit affirmed summary judgment and held that "[t]he bankruptcy code imposes a duty

---

[13] *New Hampshire*, 532 U.S. at 750-51.

[14] *Id*. at 751.

[15] *Id*.

[16] *Id*.

[17] 493 F.3d 1151 (10th Cir. 2007).

[18] *Id*. at 1153.

[19] *Id*. at 1154.

upon a debtor to disclose all assets, including contingent and unliquidated claims. That duty encompasses disclosure of all legal claims and causes of action, *pending or potential*, which a debtor might have."[20]

The factual situation at hand is, albeit, different from that in *Eastman*, or *any* Tenth Circuit case, for that matter. In a unique twist which serves as the basis for Plaintiff's argument against judicial estoppel, Plaintiff initially lost her underlying retaliation claim once in this Court in February 2011 on a grant of Defendant's motion for summary judgment. This "on the merits" decision, Plaintiff argues, came some twenty-one months *prior* to Plaintiff's bankruptcy petition. As such, Plaintiff was not required to include it in her Statement of Financial Affairs or corresponding schedules, as those filings only require a debtor to list legal actions that the debtor is or was a part of within *one year* of her bankruptcy petition.

If Plaintiff's journey simply ended with Defendant's award of summary judgment in February 2011, this Court may have been convinced that Plaintiff was indeed correct in remaining silent as to this claim in her bankruptcy filings. However, as much as Plaintiff would like this Court to believe that this summary judgment is the end of her story, the facts and procedural history say otherwise. After this Court's grant of summary judgment in favor of Defendant, Plaintiff chose, as she rightfully could, to exercise her right to appeal to the Tenth Circuit. And appeal she did, only a week later, on February 9, 2011. Plaintiff subsequently chose to forego listing this pending appeal in her bankruptcy filing. It is with this procedural history in mind that this Court analyzes Defendant's motion for summary judgment on the basis of judicial estoppel.

---

[20] *Id.* at 1159 (internal citations omitted) (emphasis added).

## A.  Clearly Inconsistent Positions

Defendant alleges that Plaintiff has taken a "clearly inconsistent" position by failing to list her retaliation claim against Defendant in her bankruptcy filings but now, after having obtained a Chapter 13 Plan, pursuing this litigation.  In response, Plaintiff argues that she obtained a decision "on the merits" on her retaliation claim well in advance of the one-year listing requirement and, as such, was not required to note this claim on her bankruptcy petition. This Court disagrees.

In an effort to support her theory, Plaintiff devotes some amount of time to defining the word "pending."  While acknowledging that the term is not, in fact, defined in the Bankruptcy Code, Plaintiff attempts to infer its meaning from a variety of other contexts to support her theory that "a case is 'pending' until final judgment, and does not include cases which have been dismissed, even if post-dismissal relief is sought."[21]  However, in the only Tenth Circuit case cited by Plaintiff, Plaintiff misinterprets the holding.  In the unpublished opinion *Walker v. University of Colorado Board of Regents*, the Tenth Circuit held, as Plaintiff cites, that "[a] dismissal without prejudice terminates the action and concludes the rights of the parties in that particular action."[22]  However, in *Walker*, the plaintiff's claim was dismissed due to his failure to effect service of process, not on a motion for summary judgment.[23]  Furthermore, what Plaintiff fails to note is that earlier in the opinion, the Tenth Circuit held that "[a]n order or judgment is

---

[21] Doc. 72, at 14.

[22] 1998 U.S. App. LEXIS 24973, *5-6 (10th Cir. Oct. 9, 1998) (quoting *United States v. California*, 507 U.S. 746, 756 (1993)).

[23] *Walker*, 1998 U.S. App. LEXIS at *2.

final *for purposes of appeal* if it resolves all substantive issues on the merits and effectively ends the litigation."[24]

Here, Defendant does not debate that Plaintiff's claim was final *for purposes of appeal* after Defendant's award of summary judgment in February 2011. What Defendant argues is that *because* Plaintiff opted to exercise her right to appeal, the retaliation case continued *pending* disposition by the higher court. This Court agrees.

Likewise, Plaintiff cannot hide behind some creative definition of the term "potential." To support this theory, Plaintiff cites to the holding in *Vehicle Market Research, Inc., v. Mitchell International*.[25] There, the court held that the plaintiff had no duty to disclose his potential lawsuit against the defendant in his Chapter 7 bankruptcy filings.[26] The difference between the plaintiff in *VMR* and Plaintiff here is that the plaintiff in *VMR* had not filed *any* lawsuit against the defendant prior to his bankruptcy filing. Here, Plaintiff filed her retaliation claim against Defendant long before her bankruptcy filing and *knew* at the time of her bankruptcy filing that the retaliation claim was on appeal and awaiting a decision. In fact, Plaintiff and her counsel appeared before both the Tenth Circuit Court of Appeals and the Kansas Supreme Court in this matter mere months before Plaintiff and her husband filed for bankruptcy. Plaintiff also knew that, depending on the Kansas Supreme Court's decision, her retaliation claim could be remanded for additional consideration by this Court. It is therefore clear to this Court that Plaintiff had knowledge of her pending and potential claim at the time of bankruptcy filing. As

---

[24] *Id*. at *4 (emphasis added).

[25] 2012 U.S. Dist. LEXIS 162573 (D. Kan. Nov. 14, 2012).

[26] *Id*. at *14.

such, Plaintiff was required to disclose this claim on her Statement of Financial Affairs and corresponding schedules. Her failure to do so satisfies the first factor of judicial estoppel.

## B. Persuading the Court to Accept an Earlier Position

In considering the second factor of judicial estoppel, "a court should inquire whether the suspect party succeeded in persuading a court to accept that party's former position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled."[27] In making this decision the

> concern is not so much with whether [Plaintiff] acted with some nefarious motive as it is with whether [her] actions led the bankruptcy court to accept [her] position, so that judicial acceptance of an inconsistent position in a later proceeding would introduce the risk of inconsistent court determinations and thus pose a threat to judicial integrity.[28]

Here, Defendant argues that, by issuing a confirmation order of Plaintiff's Chapter 13 Plan, the Bankruptcy Court "accepted" Plaintiff's position that no claim against Defendant existed. In contrast, Plaintiff argues that Defendant presents no evidence that she was successful in persuading the Bankruptcy Court to accept her position that she did not have a retaliation claim against Defendant. Furthermore, Plaintiff argues, even if she *had* been successful in convincing the Bankruptcy Court, Defendant presents no evidence that the Bankruptcy Court would not still have confirmed her Chapter 13 Plan. While this may be true, Plaintiff's argument is irrelevant for purposes of judicial estoppel.

To better understand the idea of the Bankruptcy Court's potential "acceptance," some background of Chapter 13 bankruptcy proceedings is helpful. As noted by the Trustee, a Chapter 13 debtor's bankruptcy estate is vast and consists of "all legal or equitable interests of the debtor

---

[27] *Queen*, 734 F.3d at 1091 (quoting *Eastman*, 493 F.3d at 1156).

[28] *Queen*, 734 F.3d at 1091 (quoting *Paup v. Gear Prods., Inc.*, 327 Fed. App'x 100, 107 (10th Cir. 2009)).

in property as of the commencement of the case," as well as "[a]ny interest in property that the estate acquires after the commencement of the case."[29]  The estate also includes "all property . . . that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted . . . ."[30]  Once a debtor has succeeded in obtaining a confirmation plan, all property of the estate is re-vested in the debtor "[e]xcept as otherwise provided in the plan or the order confirming the plan."[31]  Here, both Plaintiff and the Trustee note that Plaintiff's bankruptcy estate property will not re-vest in Plaintiff until after dismissal or discharge of her debt, effectively allowing any potential recovery that Plaintiff may receive from her retaliation claim against Defendant to be included in her bankruptcy estate.  Furthermore, the Trustee notes that confirmed Chapter 13 plans may, "[a]t any time after confirmation . . . but before the completion of payments . . . be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim . . . ."[32]  Since Plaintiff's Plan requires *at least* thirty-six monthly payments of $100 each, the earliest that Plaintiff could complete her Plan is August 2016 and, as such, the Plan is subject to modification at any time between now and that date.

While this "no harm, no foul" approach is certainly convenient, it misses the point of the judicial estoppel doctrine.  Judicial estoppel is designed to reduce the risk of harm to judicial integrity.[33]  Furthermore, Plaintiff cannot disregard the cases in this Circuit that have held that judicial estoppel applies even in a Chapter 13 context either *before or after* a bankruptcy plan has

---

[29] 11 U.S.C. § 541(a)(1), (7).

[30] 11 U.S.C. § 1306(a)(1).

[31] 11 U.S.C. § 1327(b).

[32] 11 U.S.C. § 1329(a).

[33] *Queen*, 734 F.3d at 1091 (citing *Paup*, 327 Fed. App'x at 107).

been confirmed.[34]    Therefore, this Court finds that Defendant has met the second judicial estoppel factor.

## C.  Unfair Advantage or Detriment on Plaintiff's Creditors

Finally, Defendant argues that Plaintiff has received two unfair benefits from her failure to list her retaliation claim: (1) a discharge of her consumer debt "free and clear of her creditors;" and (2) the ability to shield "any recovery that she would get from this lawsuit from her creditors."[35]   Plaintiff alleges that, contrary to Defendant's assertion, she has *not* been able to shield any potential recovery from her creditors because: (1) her Chapter 13 Plan remains open and subject to modification; (2) Plaintiff did not even have the right to pursue recovery until July 2013, when summary judgment was overruled and the case was remanded by the Court of Appeals; and (3) the only way in which recovery under this claim will be shielded from Plaintiff's creditors is if this Court employs judicial estoppel, thereby eliminating the possibility that proceeds from this claim may be used to satisfy those creditors.  In support of this argument, the Trustee notes that plans are already underway to capture any monies yielded from Plaintiff's retaliation claim in the bankruptcy estate.

Again, Plaintiff's argument misses the point.  While it may be true that any potential proceeds from Plaintiff's retaliation claim against Defendant will go to satisfy Plaintiff's creditors, this fact alone simply fails to negate Plaintiff's unfair advantage.  "Sufficient detriment

---

[34] *See Autos, Inc. v. Gowin*, 244 Fed. Appx. 885 (10th Cir. 2007) (hereinafter *Autos II*) (holding that judicial estoppel applied in a Chapter 13 context where the plaintiff debtor knew about her claims but failed to disclose them prior to confirmation of her bankruptcy plan); *Higgins v. Potter*, 2010 U.S. Dist. LEXIS 86130, *3 (D. Kan. 2010) (granting judicial estoppel while bankruptcy proceedings were still underway and the bankruptcy court had already approved the bankruptcy plan based on the plaintiff debtor's misrepresentation about her assets.  The Court held that the plaintiff's "failure to disclose her discrimination case on her bankruptcy schedule put her in a position to reap a recovery from her lawsuit, giving her an unfair advantage over her creditors.").

[35] Doc. 61, at 18.

is shown here because the omitted disclosures would have assisted the judge in making fully informed decisions about the bankruptcy plan and would have enabled creditors, who relied upon the schedules, to determine the appropriate course of action."[36]   While both Plaintiff and the Trustee make the argument that knowledge of this claim would not have changed either the Bankruptcy Court's decision to confirm the Plan or the creditors' commitment to the Plan, such a fact is nearly impossible to actually know.   "The impact of a debtor's nondisclosure must be measured in more than monetary terms because it affects creditors' willingness to negotiate their claims and enhances the debtor's bargaining position by making the pot that creditors look to for recovery appear smaller than it really is."[37]   Accordingly, as Defendant meets the third factor, judicial estoppel may be appropriate.

## D. Plaintiff's Defenses

In an effort to maintain her claim against Defendant, Plaintiff makes several arguments against judicial estoppel, namely: (1) Plaintiff ultimately disclosed her retaliation claim against Defendant and amended her bankruptcy filings; (2) Plaintiff's omission was purely by inadvertence or mistake; (3) allowing judicial estoppel will only harm Plaintiff's creditors; and (4) even if this Court sees fit to dismiss Plaintiff as a party, it should allow the Trustee to maintain the retaliation claim against Defendant.   Upon review, this Court determines that Plaintiff's first three arguments are without merit.

---

[36] *Autos, Inc.*, 330 B.R. 788, 796 (D. Kan. 2005) (hereinafter *Autos I*) (citing *Chandler v. Samford Univ.*, 35 F. Supp. 2d 861, 864-65 (N.D. Ala. 1999)).

[37] *Autos I*, 330 B.R. at 796 (quoting *Krystal Cadillac-Oldsmobile GMB Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 325 (3d Cir. 2003)).

### 1. Disclosure and Amendment of Bankruptcy Filings

Plaintiff argues that even if she was required to disclose her retaliation claim in her initial bankruptcy petition, she has now corrected any potential error and avoided any potential harm by properly amending her filings to show this suit. Defendant disregards this argument and notes that Plaintiff only disclosed this claim *after* Defendant brought Plaintiff's omission to her attention and gave notice of its intention to seek summary judgment on the grounds of judicial estoppel. This Court tends to agree.

Plaintiff's tactic is anything but novel. Courts throughout this Circuit, and the Circuit itself, have acknowledged that an attempt to correct an omission only after an opposing party either threatens to or actually does file a motion are of little to no consequence.[38] Here, Plaintiff filed her initial bankruptcy petition on November 21, 2012, while her retaliation claim against Defendant was pending on appeal in both the Tenth Circuit and the Kansas Supreme Court. On June 7, 2013, the Kansas Supreme Court issued a ruling effectively reversing Defendant's award of summary judgment. On July 23, 2013, the Court of Appeals remanded Plaintiff's retaliation claim back to this Court. On August 14, 2013, more than *two months* after the Kansas Supreme Court's decision, Defendant served Plaintiff with a Second Set of Requests for Admission

---

[38] *See Eastman*, 493 F.3d at 1154 (explaining that the fact that the plaintiff's bankruptcy was ultimately reopened and his creditors made whole were "inconsequential" given that the plaintiff only amended his bankruptcy filings after the defendant moved for summary judgment on the basis of judicial estoppel); *Queen*, 734 F.3d at 1091-92 (holding that the defendant was entitled to summary judgment on the basis of judicial estoppel after the plaintiff only disclosed her underlying discrimination claim after the defendant filed its motion); *Barker v. Asset Acceptance, LLC*, 874 F. Supp.2d 1062, 1068-69 (D. Kan. 2012) (finding that the plaintiff's failure to include the underlying case in his bankruptcy filings, despite his later amendment in response to the defendant's motion for summary judgment "[was] a deliberate attempt to deceive the bankruptcy court and manipulate the judicial system to gain an unfair advantage over his creditors . . . ."); *Higgins*, 2010 U.S. Dist. LEXIS 86130 at *8 (granting summary judgment on the grounds of judicial estoppel given the plaintiff's failure to include the underlying case in her initial bankruptcy pleadings and her later amendment only after the defendant filed for summary judgment); *Ardese v. DCT, Inc.*, 280 Fed. Appx. 691, 696 (10th Cir. 2008) ("courts will generally not allow a plaintiff to avoid judicial estoppel by amending her bankruptcy filings in response to a motion for summary judgment – based on judicial estoppel – in an ongoing civil case.") (internal citations omitted).

requesting that Plaintiff admit that she failed to disclose this lawsuit as an asset of her Chapter 13 bankruptcy estate. On that same day, Defendant advised Plaintiff's counsel in writing of its intent to seek judicial estoppel. On August 15, 2013, Defendant filed a motion seeking leave to amend its Answer to add the following language: "FedEx intends to file a motion for summary judgment on the grounds that Plaintiff failed to disclose this pending lawsuit as an asset in her Chapter 13 bankruptcy proceedings, in which her Chapter 13 Plan was confirmed and her consumer debts were greatly reduced."[39] This motion was granted on August 16, 2013.

It was not until August 21, 2013, that Plaintiff filed an amended Schedule B. This amendment *still* failed to accurately capture the status of Plaintiff's retaliation claim against Defendant. Her amended response read as follows: "Debtor has a wrongful termination lawsuit against Federal Express Corporation. 09 CV 1248 in the United States District Court for the District of Kansas – Wichita Division. Debtor lost on summary judgment in District Court. IT[sic] was appealed to the Tenth Circuit who certified it to the Kansas Supreme Court."[40] It was not until Plaintiff amended her Statement of Financial Affairs on September 13, 2013, *more than four months* after the Kansas Supreme Court issued its decision and nearly *two months* after the Court of Appeals remanded her case, that Plaintiff fully acknowledged her claim against Defendant. As the *Eastman* court held, allowing Plaintiff to

> 'back up' and benefit from the reopening of [her] bankruptcy only after [her] omission had been exposed would suggest that a debtor should consider disclosing potential assets only if [she] is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets.[41]

---

[39] Doc. 61, at 9.

[40] Doc. 72, Attachment 3, at 4.

[41] *Eastman*, 493 F.3d at 1160.

While this Court acknowledges that the plaintiff in *Eastman* had received an actual discharge of debt in his Chapter 7 bankruptcy proceeding, the same principle applies in cases where the plaintiff/debtor has not yet received a formal discharge.[42] Despite Plaintiff's later amendment of her bankruptcy filings to ultimately include her claim against Defendant, this Court cannot help but conclude that Plaintiff *only* amended those filings given Defendant's threat of summary judgment. As such, judicial estoppel is still appropriate.

### 2. Inadvertence or Mistake

Plaintiff next argues that any omission on her part was mere inadvertence or mistake and thus forecloses the possibility of judicial estoppel. Specifically, Plaintiff argues that her claim against Defendant had been dismissed on the merits in February 2011, more than one year prior to her bankruptcy filing. Furthermore, even though the claim was on appeal at the time of Plaintiff's bankruptcy filing, Plaintiff was precluded from actively pursuing the claim pending a ruling from the Kansas Supreme Court, which did not occur until June 2013. As such, Plaintiff was unaware that she needed to include the claim in her bankruptcy filings.

The Tenth Circuit has held that a failure to disclose pending or potential claims in bankruptcy filings can be blamed on inadvertence or mistake "only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment."[43] "Where a debtor has both knowledge of the claims and a motive to conceal them, courts

---

[42] *See Queen*, 734 F.3d at 1092; *Barker*, 874 F. Supp.2d at 1068-69; *Higgins*, 2010 U.S. Dist. LEXIS at *8-9. Furthermore, the Tenth Circuit "has not drawn a distinction between Chapter 7 and Chapter 13 bankruptcies in the judicial estoppel context . . . .". *Higgins*, 2010 U.S. Dist. LEXIS 86130 at *3 (citing *Autos II,* 244 Fed. Appx. at 885).

[43] *Eastman*, 493 F.3d at 1157 (internal citations omitted).

routinely, albeit at times *sub silentio*, infer deliberate manipulation."[44]  "[T]he Tenth Circuit, like the vast majority of other courts, has not been overly receptive to debtors' attempts to recover on claims about which they inadvertently or mistakenly forgot to inform the bankruptcy court."[45] This Court simply cannot believe that at the time she filed her petition for bankruptcy, Plaintiff was not aware that she had a federal lawsuit pending on appeal: Plaintiff's counsel appeared in an oral argument before both the Court of Appeals and the Kansas Supreme Court only months before Plaintiff's bankruptcy filing.  At the time of Plaintiff's bankruptcy petition, she was still awaiting a decision by both courts.  Just as was the case in *Eastman*, the fact that Plaintiff "well knew of [her] pending lawsuit and simply did not disclose it to the bankruptcy court is the only reasonable inference to be drawn from the evidence."[46]  In short, Plaintiff's assertion that she was simply unaware of her obligation is insufficient to withstand application of judicial estoppel.

### 3. Harm to Creditors

Next, Plaintiff argues that dismissing her retaliation claim against Defendant will only serve to harm her creditors, since any award she may obtain from this case will be part of the bankruptcy estate.  The Tenth Circuit has expressly rejected this argument.  In *Autos, Inc. v. Gowin*, the plaintiff/debtor attempted to salvage her claim against the defendant by agreeing with the trustee that fifty percent of any recovery received from her claim against the defendant would be shared with her creditors.[47]  In analyzing this proposed solution, the trial court noted that it

---

[44] *Id.* (internal citations omitted).

[45] *Higgins*, 2010 U.S. Dist. LEXIS at *9.

[46] *Eastman*, 493 F.3d at 1159.

[47] *Autos I*, 330 B.R. at 796.

failed to negate the plaintiff's unfair advantage.[48]  Instead, the trial court required the plaintiff to distribute any and all damages awarded to her creditors, thereby denying the plaintiff any personal recovery.[49]  On appeal, the Tenth Circuit reversed and dismissed the plaintiff's claims in their entirety on the basis of judicial estoppel.[50]

Likewise, here, Plaintiff's debt is $157,486.68.  Plaintiff provides no solution as to what happens to any recovery, should she succeed on her retaliation claim against Defendant, above and beyond this amount.  It would stand to reason that Plaintiff would prefer to keep any additional monies, a solution that drastically reduces a plaintiff's incentive to report ongoing litigation in bankruptcy filings in the first place.  As such, this Court concludes that any potential harm to Plaintiff's creditors is not outweighed by the damage of her omission and judicial estoppel remains an appropriate remedy.

### 4.  The Trustee

Finally, both Plaintiff and the Trustee assert that *even if* this Court finds judicial estoppel to be an appropriate outcome against Plaintiff, such a ruling should not apply to the Trustee, who has successfully intervened in Plaintiff's retaliation claim and has not taken an inconsistent position in the proceedings.  Defendant disagrees, arguing that "[a]llowing Plaintiff to pursue her claim against FedEx through the trustee, after initially failing to disclose the claim on her schedule of assets, would encourage future bankruptcy fraud by eliminating the disincentive for concealing claims."[51]

---

[48] *Id.*

[49] *Id.* at 796-97.

[50] *Autos II,* 244 Fed. Appx. at 891-92.

[51] Doc. 90, at 22.

In support of their positions, both Plaintiff and the Trustee cite to language in *Eastman*, whereby the Tenth Circuit noted, in a footnote, that, after allowing the trustee to intervene in the underlying personal injury action, it was "[q]uite likely [that] the district court's application of judicial estoppel against the trustee was inappropriate, at least to the extent [the plaintiff's] personal injury claims were necessary to satisfy his debts."[52]  While dicta, this footnote seems to at least suggest that it may be possible for the Trustee, as a proper party to the underlying action, to maintain Plaintiff's retaliation claim against Defendant *but only to the extent* necessary to satisfy Plaintiff's debts; that is, only in an amount up to $157,486.68.

While yet undecided in this Circuit, the idea that a trustee may pursue a judicially estopped plaintiff/debtor's underlying claim is not terribly farfetched.  In fact, several circuits, including the Fifth, Sixth, and Eleventh, have concluded that judicial estoppel does not preclude a bankruptcy trustee from pursuing claims that a plaintiff/debtor failed to disclose.[53]  In justifying such decisions, these courts rely on the premise that "[j]udicial estoppel is an equitable doctrine, and using it to land another blow on the victims of bankruptcy fraud [the creditors] is

---

[52] *Eastman*, 493 F.3d at 1155 n.3 (*citing Parker v. Wendy's Int'l., Inc.*, 365 F.3d 1268, 1271-72 (11th Cir. 2004)).  The Circuit denied to rule on whether judicial estoppel was appropriate against the trustee since the plaintiff's creditors had been paid and the trustee, on behalf of the bankruptcy estate, had abandoned the underlying personal injury claims.

[53] *See Reed v. City of Arlington*, 650 F.3d 571, 578-79 (5th Cir. 2011) (en banc) ("where a debtor is individually estopped from pursuing an undisclosed claim, absent unusual circumstances, an innocent trustee can pursue the claim for the benefit of creditors."); *Stephenson v. Malloy*, 700 F.3d 265 (6th Cir. 2012) (because it was the plaintiff/debtor that omitted the underlying negligence action, not the bankruptcy trustee, the trustee was entitled to pursue the negligence action despite the judicial estoppel against the plaintiff/debtor); *Parker*, 365 F.3d at 1272 (holding that because the plaintiff/debtor's discrimination claim became an asset of the bankruptcy estate when she filed her petition, the trustee became the real party in interest. And because the trustee never abandoned the plaintiff/debtor's discrimination claim and never took an inconsistent position under oath with regard to that claim, the trustee was not judicially estopped from pursuing the claim). *See also Biesek v. Soo Line Railroad Co.*, 440 F.3d 410 (7th Cir. 2006) (suggesting that a bankruptcy trustee should be able to pursue a claim on behalf of innocent creditors that the plaintiff/debtor himself would be judicially estopped from pursuing).

not an equitable application."[54]  Furthermore, "[e]stopping the Trustee from pursuing the [claim] would thwart one of the core goals of the bankruptcy system—obtaining a maximum and equitable distribution for creditors—by unnecessarily 'vaporizing' the assets effectively belonging to innocent creditors."[55]

This Court is keenly aware of, and takes very seriously, its obligation to protect the integrity of the court and the judicial system.  Such an obligation necessarily precludes allowing Plaintiff to pursue her retaliation claim against Defendant.  However, this Court cannot help but agree that depriving Plaintiff's creditors of a potential asset to which they are entitled, by virtue of Plaintiff's petition for bankruptcy, is an unjust result.

As such, it is the decision of this Court that the Trustee be allowed to proceed, in Plaintiff's stead, with Plaintiff's retaliation claim against Defendant.  The Court pauses here to note that evidence in the record suggests that Plaintiff places a value on this claim far and above her current debt.  Absent knowledge of the true value of Plaintiff's claim, and in an effort to devise an equitable resolution to this case, were the Trustee to be successful, this Court caps any award at the amount of Plaintiff's current debt, that is, $157,486.68.

In reaching this conclusion, the Court is aware of the Tenth Circuit's holding in *Autos II* wherein the court reversed the district court's distribution of all of the plaintiff's proceeds from his underlying lawsuit to his creditors.  While certainly understandable, this Court notes a key factual difference between the plaintiff in *Autos II* and the case at hand: here, as was the case in *Eastman*, the Trustee was allowed to intervene as a party in interest in Plaintiff's retaliation case.

---

[54] *Reed*, 650 F.3d at 579 (quoting *Biesek*, 440 F.3d at 413).

[55] *Id*. at 576 (citing *Biesek*, 650 F.3d at 413).

In *Autos*, the plaintiff had already reaped the benefit of a monetary reward in the underlying action, without assistance from the Trustee.

In sum, the Court grants Defendant's motion for summary judgment and thereby precludes Plaintiff's pursuit of her claim of workplace retaliation against Defendant on the grounds of judicial estoppel. Likewise, this Court grants Plaintiff's motion for partial summary judgment only so far as it allows the Trustee to pursue Plaintiff's claim for workplace retaliation in an amount not to exceed Plaintiff's current debt, $157,486.68. The remainder of Plaintiff's motion is denied.

**IT IS THEREFORE ORDERED** that Defendant's motion for summary judgment (Doc. 60) is hereby **GRANTED**. Plaintiff's motion for partial summary judgment (Doc. 71) is **GRANTED IN PART and DENIED IN PART**.

**IT IS SO ORDERED**.

Dated this 26th day of March, 2014.

Eric F Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE