## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CYNTHIA PFEIFER and
LAURIE B. WILLIAMS
(Chapter 13 Trustee)

        *Plaintiffs,*

  vs.                              Case No. 09-cv-1248-EFM-KMH

FEDERAL EXPRESS CORPORATION,

        *Defendant.*

### MEMORANDUM AND ORDER

Plaintiffs Cynthia Pfeifer and Chapter 13 Trustee, Laurie B. Williams, assert a claim for workers' compensation retaliation against Defendant Federal Express Corporation ("FedEx"). This matter comes before the Court on FedEx's Motion for Summary Judgment (Doc. 116). Because the Court finds that there is no genuine issue of material fact as to whether FedEx's reason for terminating Pfeifer is pretextual, the Court grants FedEx's motion.

# I.     Factual and Procedural Background[1]

## A.     Pfeifer's Work-Related Injury

Pfeifer began working for FedEx on January 17, 1994.  At the time of her termination on May 2, 2008, Pfeifer held the position of courier at FedEx's facility in Hays, Kansas.  Pfeifer's immediate supervisor was Ken Kelley, and her Senior Manager was Diann Hummelsheim.

On September 11, 2007, Pfeifer sustained a work-related injury.  That same day, Kelley was notified of her injury, and a workers' compensation claim was filed on Pfeifer's behalf.  Pfeifer alleges that approximately one week after she suffered her injury, Hummelsheim called her and yelled at her for not providing documentation regarding her injury.  According to Pfeifer, Hummelsheim told her that she needed to return to work immediately or she would be fired.  After this call, on September 20, 2007, Pfeifer provided FedEx an "Activity/Work Status Report" that stated she was "unable to work due to injury to knee occurring on 9/11/07."[2]  Two months later, on November 27, 2007, Pfeifer called Kelley to notify him that she was released to return to work.  Pfeifer alleges that Hummelsheim then called her and told her that she needed to be 100 percent healthy or she would be fired.  Pfeifer returned to work on November 28, 2007, after faxing a medical release form stating that she could return to work on that day.

When Pfeifer returned to work in November 2007 she worked the same route that she was running prior to her leave of absence—route 62.  Route 62, however, changed while Pfeifer was on leave, but this was a typical practice at FedEx.  In addition, Pfeifer was required to work

---

[1]     The Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party in accordance with summary judgment procedures.

[2]     Bell Depo., Doc. 134-2, p. 7.

the afternoon ramp and route instead of the morning ramp and route, and the first three days Pfeifer returned to work, she was not released into FedEx's computer system.

**B.      Pfeifer's Termination of Employment**

In 2007 and 2008, when the FedEx couriers at the Hays facility arrived at work, they were supposed to first clock in on their paper timecards and then obtain a hand-held device called a "Power Pad."  The couriers were then supposed to (1) enter their employee number into the Power Pad, (2) enter their scheduled start time, and (3) enter their actual start time.  The start time that a courier enters in the Power Pad is supposed to match the stamped punch-in time on the courier's paper timecard.  However, from time to time, the couriers' clock-in times on the paper timecard did not match the clock-in times on the Power Pad, or couriers forgot to clock in or clock out on their paper timecards.  FedEx couriers were not paid based on the times reflected on the paper timecards.  Instead, they were paid based on the clock-in and clock-out times reflected on their electronic timecards printed from the Power Pads.

FedEx has a policy, of which Pfeifer was aware, that falsification of a FedEx document, such as a timecard, may result in termination.  In March 2008, Hummelsheim conducted a timecard audit of the Hays facility employees.  To perform the audit, Hummelsheim asked a customer service agent to randomly pull the paper timecards of a mix of the employees at the Hays facility.  One of the timecards selected for review was Pfeifer's February 6, 2008, timecard.  That timecard showed a stamped punch-in time of 9:28 a.m. but the eight was changed to a zero, so the time read 9:20 a.m.  Pfeifer's scheduled start time for that day was 9:25 a.m.  FedEx alleges that the alteration of the stamped punch-in time on the timecard prevented the timecard

from reflecting that Pfeifer arrived to work late that day and provided her with an additional eight minutes of paid time.

After discovering the alteration, Hummelsheim asked Pfeifer why the original punch-in start time showed 9:28 a.m. but the start time Pfeifer manually entered in her Power Pad showed 9:20 a.m.  Pfeifer responded "I don't know.  I don't remember."[3]   Hummelsheim also asked Pfeifer if she could explain the alteration to her timecard.  Pfeifer responded that she did not alter it and she did not know how the timecard had been altered.  Pfeifer then asked Hummelsheim to pull her Power Pad documents, which Pfeifer believed would verify that she arrived to work on time on February 6, 2008.  When questioned about the altered timecard at her deposition, Pfeifer stated that she did not recall whether she altered the start time that was written on the top of her February 6, 2008, timecard.

FedEx suspended Pfeifer on March 20, 2008.  Shortly following her suspension, Pfeifer submitted an internal complaint dated March 23, 2008.  The complaint alleges myriad ways Pfeifer was mistreated at FedEx before and after her injury.  Pfeifer's human resources advisor, Joel Holfrichter, investigated her allegations.  During his investigation, Holfrichter discovered another altered timecard dated January 22, 2008.  Like the February 6, 2008, timecard, the altered clock-in time on this timecard matched the start time that Pfeifer manually keyed into the Power Pad.  Holfrichter testified in his deposition that when he asked Pfeifer about the January 22, 2008, timecard, Pfeifer had no explanation for the alteration.

After Holfrichter completed the investigation of Pfeifer's internal complaint, FedEx resumed its own investigation of Pfeifer's altered timecards.  As part of this investigation,

---

[3] Pfeifer Depo., Doc 117-3, p. 92.

Holfrichter discovered a third altered timecard dated February 20, 2008.  On this timecard, the punch-out time was altered to show that Pfeifer worked five hours and fifty-nine minutes instead of six hours.  This alteration prevented Pfeifer from incurring a break violation.  Pfeifer testified in her deposition that she did not remember Hummelsheim asking her about this timecard.  However, Hummelsheim testified that she did ask Pfeifer about this timecard and that Pfeifer had no explanation for the alteration.

As a result of Holfrichter's investigations, Hummelsheim, Holfrichter, and FedEx Managing Director James Malone concluded that Pfeifer falsified her timecards and should be terminated.  FedEx terminated Pfeifer's employment on May 2, 2008.  After Pfeifer was terminated, Hummelsheim provided her a memorandum that other FedEx couriers at the Hays facility received on March 1, 2008—three weeks before Pfeifer's suspension.  The memorandum outlined the procedure for picking vacations for the June 2008 through May 2009 fiscal year.  Although Hummelsheim provided the memorandum to the other Hays couriers in March 2008, none of the Hays couriers picked their vacation days until after Pfeifer was terminated.

Pfeifer also utilized FedEx's appeal process after her termination in an effort to reinstate her employment.  During the first of three appeal hearings, Pfeifer told the hearing panel that she did not believe Hummelsheim altered her timecard and that she did not believe any other Hays employee altered her timecards.  However, during the second and third appeal hearings, Pfeifer asserted that Hummelsheim altered her timecards in an effort to have her terminated.

### C.     Jason Goetz's Altered Timecards

In 2008, Jason Goetz was also a FedEx courier at the Hays facility.  Goetz has never filed a workers' compensation claim.  During the March 2008 timecard audit, Hummelsheim

discovered that some of Goetz's paper timecards were altered.  Hummelsheim suspended Goetz, asked for his written statement explaining the alterations, and then conducted an investigation into the potential falsification.

For two of Goetz's altered timecards, he started helping a customer locate the customer's package that was shipped by FedEx Ground.  The customer was waiting at the station's front door when Goetz arrived to work.  Goetz assisted the customer by calling a representative at FedEx Ground to inquire about the package.  Goetz did this, however, before clocking in on his paper timecard, so he altered the paper timecard to reflect the actual time he started helping the customer.  This happened twice with the same customer.  Hummelsheim confirmed this by speaking with the FedEx Ground representative who stated that she was on the phone with Goetz during the time he indicated on his timecard that he started to work.

Goetz had another altered timecard in which he wrote in his clock-out time because he accidentally left work without clocking out.  When he realized his mistake, he returned to the station to write the clock-out time on his timecard that matched the clock-out time on his Power Pad.  Hummelsheim confirmed that Goetz was working until his clock-out time because she confirmed that after he ran his route, he washed the station's vans.  The fifteen minutes it usually takes to wash each van coincided with the amount of time Goetz indicated on his timecard.

FedEx determined that Goetz's final timecard alteration did not constitute a falsification because he did not gain a personal benefit.  He took time away from himself on the timecard, cheating himself out of a few minutes of money.  After clocking out on his Power Pad, he helped a customer. Then, he clocked out on his paper timecard.  Thinking that the clock-out time in his Power Pad was supposed to match the clock-out time on his timecard, he altered the stamped

clock-out time on his timecard to match the earlier clock-out time on his Power Pad.  Although FedEx did not find Goetz's alterations to be falsifications, he still did not follow the correct timecard procedures, so Hummelsheim issued him a disciplinary letter in the form of a Performance Reminder.

**D.      Pfeifer's Suit Against FedEx**

Pfeifer filed this lawsuit on August 13, 2009, alleging a claim for workers' compensation retaliation under Kansas law.  Pfeifer asserts that FedEx repeatedly intimidated and retaliated against Pfeifer because of her workers' compensation claim until she was terminated on May 2, 2008.  On November 21, 2012, Pfeifer and her husband jointly filed a voluntary petition for Chapter 13 bankruptcy in the United States Bankruptcy Court for the District of Kansas.  Pfeifer did not initially disclose her lawsuit against FedEx in her petition or corresponding financial affairs documents, but she subsequently amended her bankruptcy pleadings to include her claim. FedEx and Pfeifer (joined by Chapter 13 Bankruptcy Trustee Laurie Williams) then filed cross motions for summary judgment arguing whether Pfeifer's claim was barred by the doctrine of judicial estoppel.  The Court ruled that Pfeifer was precluded from bringing her workers' compensation claim against FedEx but that the Trustee may pursue Pfeifer's claim in an amount not to exceed Pfeifer's current debt.  FedEx now moves for summary judgment on the merits of Pfeifer's workers' compensation retaliation claim.

**II.      Legal Standard**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[4]

---

[4]      Fed. R. Civ. P. 56(c).

A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[5]  The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[6]  If the movant carries this initial burden, the nonmovant that bears the burden of persuasion at trial may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[7]  These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[8]  The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[9]

### III.   Analysis

In Kansas, the employer-employee relationship is governed by the employment-at-will doctrine.[10]  Under this doctrine, either party may terminate the employment at any time for any reason at all.[11]  There are, however, exceptions to this general rule, and Kansas law prohibits an

---

[5]     *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[6]     *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[7]     *Id.* (citing Fed. R. Civ. P. 56(e)).

[8]     *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[9]     *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[10]     *Johnson v. Nat'l Beef Packing Co.*, 220 Kan. 52, 54, 551 P.2d 779, 781 (1976).

[11]     *Id.*

employer from dismissing an employee in retaliation for exercising his or her rights under the Kansas Workers' Compensation Act.[12]

In analyzing workers' compensation retaliation claims brought under Kansas law, the federal courts apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*.[13]  Under this framework, Plaintiffs must establish a prima facie case of retaliation.[14]  If they meet their burden, FedEx must come forward with a non-retaliatory reason for the discharge.[15]  Plaintiffs then have the burden of showing that this reason is a pretext for unlawful retaliation.[16]

FedEx contends that the Court should grant summary judgment on Plaintiffs' claim because Plaintiffs cannot establish a prima facie case of retaliation.  In the alternative, FedEx asserts that even if the Court finds Plaintiffs have established a prima facie case of retaliation, Plaintiffs have not met their burden of showing that FedEx's reason for Pfeifer's discharge was pretextual.

### A.  Plaintiffs' Burden at the Summary Judgment Stage

The parties first disagree about Plaintiffs' burden to overcome FedEx's motion for summary judgment.  Relying on the Tenth Circuit's decision in *Foster v. AlliedSignal, Inc.*,[17] FedEx asserts that Plaintiffs must prove their claim by a preponderance of the evidence and that

---

[12]    *Murphy v. City of Topeka*, 6 Kan. App. 2d 488, 495, 630 P.2d 186, 192 (1981); *Ortega v. IBP, Inc.*, 255 Kan. 513, 516-17, 874 P.2d 1188, 1191 (1994).

[13]    *See Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1211 (10th Cir. 2007).

[14]    *Id.*

[15]    *Id.*

[16]    *Id.* at 1212.

[17]    293 F.3d 1187, 1195 (10th Cir. 2002).

the evidence Plaintiffs proffer in response to FedEx's motion must be clear and convincing in nature.  In response, Plaintiffs argue that the Supreme Court's decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*,[18] demonstrates that the Tenth Circuit's standard in *Foster* no longer applies and, instead, the preponderance of the evidence standard should apply.

Having reviewed *Foster* and *Shady Grove*, the Court finds that Plaintiffs' burden depends on which stage of the *McDonnell Douglas* burden-shifting scheme Plaintiffs are offering evidence.  According to the Tenth Circuit's decision in *Foster*, the clear and convincing evidence standard does not apply at the prima facie stage.  The Tenth Circuit stated that "[h]olding a plaintiff to such a standard at the prima facie stage would pervert the logic of the *McDonnell Douglas* burden-shifting scheme adopted by the Kansas courts."[19]  Therefore, the Court will not apply the clear and convincing evidence standard when analyzing whether Plaintiffs have established a prima facie case.

The Court will apply such standard, however, when analyzing whether FedEx's proffered reason for discharging Pfeifer was pretextual.  In *Foster*, the Tenth Circuit made clear that "to avoid summary judgment after an employer has articulated a legitimate, non-retaliatory reason for the termination, 'the employee must assert specific facts establishing a triable issue as to whether the employer's reason for discharge is a mere cover-up or prextext for retaliatory discharge.' "[20]  The court then stated that "the employee's ultimate burden is to establish retaliation 'by a preponderance of the evidence, but the evidence must be clear and convincing in

---

[18]   599 U.S. 393 (2010).

[19]   *Foster*, 293 F.3d at 1193 n.3.

[20]   *Id.* at 1194 (quoting *Bracken v. Dixon Indus., Inc.*, 272 Kan. 1272, 1276, 38 P.3d 679, 682 (2002)).

nature.' "[21]   The Supreme Court's decision in *Shady Grove* does not overrule this decision, and Plaintiffs have failed to cite any other case law that does.

In *Shady Grove*, the Supreme Court construed the Rules Enabling Act,[22] which gives the Supreme Court "the power to prescribe general rules of practice and procedure and rules of evidence for cases in" federal courts, provided that "such rules shall not abridge, enlarge or modify any substantive right."[23]   The Tenth Circuit has held that Justice Stevens's concurrence is the controlling analysis in *Shady Grove*.[24]   This concurrence provides that a federal rule cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right.[25]

Kansas law provides that a plaintiff in a retaliation case can successfully oppose a motion for summary judgment by a preponderance of the evidence.[26]   However, this law is not so intertwined with a party's right to assert a workers' compensation claim that it defines the scope of the state-created right.  This is because, under Kansas law, state courts impose the clear and convincing evidence standard at trial.[27]   As the Tenth Circuit explained in *Foster*, federal courts use the clear and convincing evidence standard because

---

[21]   *Id.* (quoting *Ortega*, 255 Kan. at 528, 874 P.2d at 1198).

[22]   28 U.S.C. §§ 2071-2077.

[23]   28 U.S.C. § 2072.

[24]   *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1217 (10th Cir. 2011).

[25]   *Shady Grove*, 599 U.S. at 423.

[26]   *Rebarchek*, 272 Kan. 546, 35 P.3d at 898.

[27]   272 Kan. at 551, 35 P.3d at 897.

> [i]n ruling on a motion for summary judgment, the judge must view the evidence through the prism of the substantive evidentiary burden. This conclusion is mandated by the nature of the determination. The question here is whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of evidence required by the governing law or that he did not. Whether a jury could reasonably find for either party, however, cannot be defined except by criteria governing what evidence would enable the jury to find for either the plaintiff or the defendant . . . ."[28]

Therefore, the Court will apply the clear and convincing standard of proof when analyzing whether FedEx's reason for discharging Pfeifer was pretextual. The Court notes, however, that in applying this standard, it will not "engage in a mini-trial."[29] The Court's role "is simply to determine whether the evidence proffered by [Plaintiffs] would be sufficient, if believed by the ultimate factfinder to sustain [their] claim."[30]

## B. Prima Facie Case

To establish a prima facie case of workers' compensation retaliation under Kansas law, a plaintiff must establish the following four elements:

> (1) The plaintiff filed a claim for workers' compensation benefits or sustained an injury for which he or she might assert a future claim for such benefits; (2) the employer had knowledge of the plaintiff's workers' compensation claim [or] injury; (3) the employer terminated the plaintiff's employment; and (4) a causal connection existed between the protected activity or injury and the termination.[31]

FedEx does not dispute that the first three elements have been established. FedEx only contends that Plaintiffs cannot establish causation between Pfeifer's injury or filing of a workers' compensation claim and her subsequent termination.

---

[28] *Foster*, 293 F.3d at 1195 (quoting *Anderson*, 477 U.S. at 254).

[29] *Id.*

[30] *Id.*

[31] *Proctor*, 502 F.3d at 1212.

"To determine whether a causal connection exists, Kansas courts typically begin by asking whether the employee's protected activity and the termination are closely connected in time."[32]  The "protected activity" refers to either to the workplace injury or the filing of a workers' compensation claim.[33]  "Unless the termination is very closely connected in time to the protected activity, a plaintiff must rely on additional evidence beyond temporal proximity to establish causation."[34]  The Tenth Circuit has repeatedly found that a three-month period, standing alone, is insufficient to establish causation.[35]  Here, the time span between the time Pfeifer's workers' compensation claim and her termination is approximately seven months. Standing alone, this is not sufficient to establish a causal connection, and therefore, Plaintiffs must come forward with additional evidence to establish a prima facie case.

Plaintiffs point to the following conduct as additional evidence of causation:  (1) Fed Ex accused Pfeifer of falsifying her timecards; (2) Pfeifer was not allowed to clock in at her scheduled start time; (3) Pfeifer was not given the March 2008 vacation memorandum or priority to choose her vacation days in 2008; (4) Kelley inserted breaks into Pfeifer's timecard because he believed she was taking too long to perform duties; (5) from November 28, 2007, through November 30, 2007, Pfeifer was not released into FedEx's computer system; (6) FedEx replaced

---

[32]    *Id*. at 1212 (citing *Rebarchek*, 272 Kan. at 555, 35 P.3d at 898).

[33]    *See Kinchion v. Cessna Aircraft Co*., 2013 WL 5150727, at *4 (D. Kan. Sept. 12, 2013) ("To establish the fourth element, a plaintiff typically shows proximity in time between the claim and discharge."); *Proctor*, 502 F.3d at 1212 (noting that the filing of the claim is the protected activity); *Rebarchek*, 272 Kan. at 555, 35 P.3d at 899 ("Proximity in time between the claim and discharge is a typical beginning point for proof of causal connection.")

[34]    *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997).

[35]    *See Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997); *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999); *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004) ("A six-week period between protected activity and adverse action may be sufficient, standing alone, to show causation, but a three-month period, standing alone, is insufficient.").

Pfeifer's pre-injury working hours of 7:00 a.m. to 3:00 p.m. with the hours of 9:00 a.m. to 7:00 p.m.; (7) FedEx required Pfeifer to use personal time for several weeks to make up the deficiency in her guaranteed hours; (8) Hummelsheim called Pfeifer on the phone within a week of Pfeifer suffering her work-related injury threatening to terminate Pfeifer if she did not return to work; (9) Hummelsheim demanded paperwork from Pfeifer that was not required; (10) Hummelsheim continuously threatened to terminate Pfeifer if she was not healthy enough to work; and (11) Hummelsheim cut off Pfeifer's gas card in March 2008.

Plaintiffs' evidence includes various complaints about Pfeifer's work environment, including her work hours, her work shift (having to work the afternoon shift versus the morning shift), being forced to insert a break into her timecard, and her gas card not working. Hummelsheim, however, was not responsible for these problems. The undisputed evidence shows that Kelley, Pfeifer's direct manager, was solely responsible for scheduling Pfeifer's work hours and for requiring Pfeifer to insert a break into her timecard. Plaintiffs, however, do not allege that Kelley retaliated against Pfeifer. They only allege that Hummelsheim and Holfrichter retaliated against her. Furthermore, Plaintiffs have pointed to no evidence suggesting that Hummelsheim was responsible for shutting off Pfeifer's gas card or that she was responsible for not putting Pfeifer into FedEx's computer system upon her return to work in November 2007. Indeed, Pfeifer admitted in her deposition that she did not know if Hummelsheim was the reason why she was not in the computer system for three days.

Plaintiffs' evidence also falls short in view of Pfeifer's statements regarding Hummelsheim's conduct towards her in her internal complaint. The complaint states that "[h]arassment from Diann Hummelsheim started way before I started documenting on August

-14-

11, 2007."[36]  Pfeifer was not injured until September 11, 2007, at least one month before Pfeifer began documenting Hummelsheim's perceived harassment.  Thus, this statement suggests that any negative action Pfeifer perceived from Hummelsheim was not the result of Pfeifer's workers' compensation claim.

Given that Plaintiffs cannot rely on much of their evidence of retaliatory conduct, it is a close call as to whether Plaintiffs have met their burden to show a prima facie case of retaliation. The Court, however, is mindful of the established principle that a "prima facie case is not an onerous burden."[37]  Plaintiffs have shown that Hummelsheim made comments towards Pfeifer after her injury regarding her continued employment and that Hummelsheim did not give Pfeifer the March 2008 vacation memorandum at the same time as she gave the other couriers at the Hays facility the memorandum.  Therefore, for the purpose of this Order, the Court is willing to assume that Plaintiffs have met their burden to show causation.  Thus, the Court will focus its ruling on Plaintiffs' lack of sufficient proof of pretext.

## C.  Pretext

Because Plaintiffs have established a prima facie case of retaliation, the burden shifts to FedEx to show an articulate, non-retaliatory reason for Pfeifer's discharge.  FedEx has done so by offering that FedEx had a policy, of which Pfeifer was aware, that the alteration of a FedEx document, such as a timecard, was a dischargeable offense that results in termination.  FedEx terminated Pfeifer because it believed she falsified three of her paper timecards over a ninety-day

---

[36]   Internal Complaint, Doc. 129-3, p. 7.

[37]   *Robinson v. Wilson Concrete Co.*, 913 F. Supp. 1476, 1483 (D. Kan. 1996).

period.  Thus, the Court finds that FedEx has offered a legitimate, non-retaliatory reason for Pfeifer's discharge.

To avoid summary judgment after an employer has offered a legitimate reason for termination, "the employee must assert specific facts establishing a triable issue as to whether the employer's reason for the discharge is mere cover-up or pretext for retaliatory discharge."[38]  To demonstrate pretext, a plaintiff must show more than "mere conjecture" that her employer's reason for termination is insufficient.[39]  The plaintiff must show that that the employer's reason "was so inconsistent, implausible, incoherent, or contradictory that it is unworthy of belief."[40]

"A challenge of pretext requires a court to look at the facts as they appear to the person making the decision to terminate, not the aggrieved employee."[41]  In this case, the relevant eyes through which to view the termination decision are Hummelsheim, Holfrichter, and Malone. "The relevant inquiry is not whether [their] proffered reasons were wise, fair, or correct," but rather "whether they believed those reasons to be true and 'acted in good faith upon those beliefs.' "[42]

The Court grants summary judgment to FedEx on this ground.  Plaintiffs have failed to come forward with clear and convincing evidence that Hummelsheim, Holfrichter, and Malone did not believe their reasons for terminating Pfeifer were fair or correct.  The undisputed

[38]  *Bracken*, 272 Kan. at 1276, 38 P.3d at 682 (citing *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455 (10th Cir. 1994)).

[39]  *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

[40]  *Rojo v. IPB, Inc.*, 2007 WL 593637, at *9 (D. Kan. Feb. 21, 2007) (quoting *Miller v. Auto. Club of N.M., Inc.*, 420 F.3d 1098, 1123 (10th Cir. 2005) (internal quotation omitted)).

[41]  *Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir. 2007) (citing *Green v. New Mexico*, 420 F.3d 1189, 1191 n.2 (10th Cir. 2005).

[42]  *Id.* (quoting *Rivera v. City and Cnty. of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004)).

-16-

evidence shows that from Hummelsheim's initial questioning of Pfeifer on May 20, 2008, through two subsequent investigations, and the first step of Pfeifer's appeal, Pfeifer never provided any explanation as to why or how her timecards were altered.  Although Pfeifer did ask Hummelsheim to pull her Power Pad documents from February 6, 2008, these documents were not available.  Furthermore, Pfeifer admitted in her deposition that these documents would not explain the alteration to her timecards.

Plaintiffs argue that FedEx ignored Pfeifer's electronic timecard from February 6, 2008, which shows a start time of 9:20 a.m., when it made the decision to terminate Pfeifer.  According to Plaintiffs, this start time shows that Pfeifer was actually at work before her scheduled start time of 9:25 a.m.  The Court disagrees.  The clock-in procedure required FedEx employees to manually clock-in on their paper timecards as soon as they entered the building.  Then, after clocking in with the paper timecard, employees were supposed to get a Power Pad and manually key in the same start time in the Power Pad that was clocked-in on their timecard.  Pfeifer manually keyed in the same start time in her Power Pad as the altered start time on her timecard.  Or, in other words, Pfeifer keyed in 9:20 a.m. on her Power Pad when the original, unaltered stamped clock-in time on her timecard indicated that she did not arrive until 9:28 a.m.  Pfeifer's electronic timecard does not verify that she arrived and began working at 9:20 a.m. because she manually keyed that time into her Power Pad and there is no other evidence showing that this was the actual time she arrived at work.

Plaintiffs also assert that Hummelsheim altered Pfeifer's timecards in retaliation for Pfeifer's workers' compensation claim.  Plaintiffs point to no evidence in the record that supports this theory.  Plaintiffs also fail to cite any evidence showing that Hummelsheim had any

motive for retaliating against Pfeifer for filing a workers' compensation claim. Moreover, as noted above, Pfeifer's internal complaint states that she believes Hummelsheim began harassing her before August 2007, which was before her September 2007 injury and workers' compensation claim. Thus, this statement is evidence that Hummelsheim's alleged mistreatment of Pfeifer was not due to Pfeifer's workers' compensation claim.

Finally, Plaintiffs assert that FedEx's reason for terminating Pfeifer was pretextual because another similarly situated comparator was treated more favorably than her. Specifically, Plaintiffs argue that the fact that Jason Goetz, another courier at the Hays facility, altered his timecards, but was not terminated, is evidence that FedEx's termination of Pfeifer was a pretext for retaliation. The Court disagrees.

FedEx employed the same investigative process for both Pfeifer and Goetz. After Hummelsheim discovered the alterations to Goetz's timecards, she suspended him, asked for his written statement, and then conducted an investigation into the potential falsifications. But Goetz and Pfeifer's situations are completely different because Goetz admitted that he altered his timecards and provided a reasonable explanation that both management and human resources could investigate.

For two of Goetz's altered timecards, he explained that he started helping a customer locate a package before clocking in. Hummelsheim was able to confirm this explanation by speaking with a FedEx Ground representative who verified that she was on the phone with Goetz during the time he indicated on his timecard that he started working. For another timecard, Goetz stated that he wrote in his clock-out time because he accidentally left work without clocking out, and when he realized it, he returned to the station to write his clock-out time on his

timecard that matched the clock-out time on his PowerPad.  Hummelsheim was able to confirm that Goetz was working until his clock-out time because she confirmed that after he ran his route, he washed the station's vans.  Goetz's final altered timecard did not constitute a falsification because he did not gain a personal benefit.  However, because Goetz did not follow correct timecard procedures, Hummelsheim sent him a disciplinary letter.

Unlike Goetz, Pfeifer never admitted she altered her timecards or provided a reasonable explanation as to how or why they had been altered.  The only explanation Pfeifer provided was that Hummelsheim altered the timecards, and Pfeifer did not offer this explanation until the second step of the appeals hearing, after she had already told the hearing panel in a previous step that she did not think Hummelsheim or any other FedEx employee had altered her timecards.  Thus, unlike Goetz's situation, FedEx management and human resources had no plausible explanation to investigate how or why Pfeifer's timecards were altered.  Therefore, the Court finds that FedEx did not treat Goetz more favorably than Pfeifer.

In conclusion, Plaintiffs have not come forward with sufficient evidence to create a genuine issue of material fact that FedEx's reason for terminating Pfeifer is pretextual.  Accordingly, Plaintiffs have not sustained their burden under the *McDonnell Douglas* burden-shifting framework, and the Court grants summary judgment in FedEx's favor.

**IT IS THEREFORE ORDERED** that Federal Express Corporation's Motion for Summary Judgment (Doc. 116) is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 29th day of August, 2014.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE